# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **MCKINNEY SALVAGE LLC** | **CASE NO. 6:24-CV-00111** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **RIGID CONSTRUCTORS LLC** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court are the following motions to dismiss Plaintiff's Second Amended and Restated Complaint pursuant to F.R.C.P. Rule 12(b)(6):

- Motion to Dismiss by U.S. Specialty Insurance Company (Rec. Doc. 66). Plaintiff, McKinney Salvage, LLC, opposed the motion (Rec. Doc. 75); Defendant, Rigid Constructors, LLC, opposed (Rec. Doc. 78); U.S. Specialty replied (Rec. Doc. 79).

- Motion to Dismiss by Mitsui Sumitomo Insurance USA, Inc. ("Mitsui Ins.") and Mitsui Sumitomo Marine Management (USA), Inc. ("Mitsui Management") (Rec. Doc. 69). McKinney opposed the motion (Rec. Doc. 74); Rigid opposed (Rec. Doc. 76); and Mitsui replied (Rec. Doc. 80).

- Motion to Dismiss by Certain Underwriters at Lloyd's Subscribing Severally to Policy bearing Unique Market Reference No. B1115E210162 ("Lloyd's") (Rec. Doc. 70). McKinney opposed the motion (Rec. Doc. 73); Rigid opposed (Rec. Doc. 77); Lloyd's replied (Rec. Doc. 83).

The Court shall refer to U.S. Specialty, Mitsui Ins., and Lloyd's collectively as Rigid's "insurers" and/or "Underwriters," distinguished from Mitsui Management.

The motions were referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that the motions be denied.

## **Facts and Procedural History**

McKinney Salvage filed this suit against Rigid Constructors and its insurers to recover its fees incurred for the salvage of Rigid's barge *Ambition*, which sank off the coast of Cameron, Louisiana in June 2022.[1] In July 2022, Rigid and McKinney entered a Salvage Agreement, which provided for a daily rate of $110,000, plus interest on unpaid sums. (Rec. Doc. 57, ¶7; Rec. Doc. 3-1, p. 2-3).

McKinney alleges that as a condition precedent for its acceptance of the Salvage Agreement, it required from Rigid "a guarantee from a solvent and

---

[1] McKinney initially filed suit in the Eastern District of Louisiana in September 2023. The case was transferred to this Court in January 2024. (Rec. Doc. 41). The insurers filed motions to dismiss; however, this Court denied the motions without prejudice after McKinney filed a Second Amended and Restated Complaint. (Rec. Doc. 58). The insurers' renewed motions now before the Court seek to dismiss the Second Amended Complaint.

trustworthy source guaranteeing its fees and expenses would be paid." (Rec. Doc. 57, ¶16). Hence, on June 21, 2022, Rigid's broker, Dwight Andrus, emailed Claurisse Campanale, claims specialist at Mitsui Management, asking: "[H]ow do we go about getting the financial guarantee or Letter of Undertaking from MSIG guaranteeing that they will pay the fees associated with the salvage operation to McKinney?" Ms. Campanale responded:

> Thank you for your call. We confirm that Underwriters will be paying for McKinney's Services, but the insured should go ahead and sign the contract as the Owner of the crane barge. I also understand P&I Excess are on notice and aware [in] the event their policy is triggered.

(Rec. Doc. 3-3).

Mitsui Management was the managing agent for primary protection and indemnity ("P&I") and hull coverages for Rigid's vessels. Rigid's P&I policy was underwritten equally by U.S. Specialty and Mitsui Insurance (collectively "primary insurers"). Rigid was also covered by an umbrella excess policy underwritten by Lloyd's and also managed by Mitsui Management.[2]

---

[2] The parties do not dispute the insurers' relationships. See Rec. Doc. 69-1, p. 2 (Mitsui's statement of its capacity) and Rec. Doc. 70-1, p. 5-6 (Lloyd's statement). Rigid and its insurers' relationships are further alleged in Rigid's cross claim against them at Rec. Doc. 10 and in briefing at Rec. Doc. 76. Although McKinney did not specifically allege each insurer's relationship to Rigid, the parties do not dispute these basic facts, which are sufficiently referenced in the complaint and central to McKinney's claims. The Court therefore considers, as essential, the parties' relationships in ruling on the motions to dismiss. See *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (In ruling on a Rule 12(b)(6) motion to dismiss, the court may consider documents outside the complaint if they are referenced in the complaint and central to the claims.)

McKinney alleges that it conducted salvage operations between August 8, and October 17, 2022, and provided an invoice to Rigid for services totaling $9,076,885.53. (Rec. Doc. 57, ¶9-11; Rec. Doc. 3-2). When its invoice went unpaid, McKinney filed this suit against Rigid for breach of the Salvage Agreement (Count One) and asserted claims for detrimental reliance and unjust enrichment against Rigid and its insurers collectively (Count Two). McKinney asserts it justifiably relied upon Ms. Campanale's email as a guarantee that it would be paid and therefore agreed to provide the salvage services. On the same allegations, McKinney asserts claims as a third-party beneficiary of Rigid and its insurers' alleged promise of payment, pursuant to the Louisiana concept of *stipulation pour autrui*. (Count Three). Alternatively, McKinney alleges that Mitsui Management is liable for misrepresentations and false promises in the event Ms. Campanale and Mitsui Management lacked authority to bind the insurers for payment of McKinney's fees. (Rec. Doc. 57, ¶33).

U.S. Specialty, the Mitsui defendants, and Lloyd's separately move to dismiss McKinney's claims essentially on the same grounds: that McKinney is legally unable to recover from Rigid's insurers, with whom it lacks contractual privity or any other direct recourse. McKinney, of course, disagrees, relying on the Mitsui Management email stating that the "Underwriters" would be paying.

4

## Law and Analysis

### I. Standard applicable to Rule 12(b)(6) motions to dismiss.

The defendant may challenge the complaint for failing to state a claim by filing a motion to dismiss under F.R.C.P. Rule 12(b)(6). When considering such a motion to dismiss for failure to state a claim, the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) Conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982); *Collins v. Morgan Stanley*, 224 F.3d at 498. The law does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more …than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

## II.    <u>**Applicable law and initial arguments for dismissal.**</u>

The Salvage Agreement at the heart of McKinney's dispute with Rigid is a maritime contract to which maritime law applies. *Rozel Operating Co. v. Crown Point Holdings LLC*, No. CV 16-1687, 2016 WL 3020920, at *4 (E.D. La. May 26, 2016), citing 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 3-10 (4th ed. 2004); *Int'l Marine, L.L.C. v. Delta Towing, L.L.C.*, 704 F.3d 350, 354 (5th Cir. 2013). Likewise, marine insurance policies are subject to maritime law. See *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 144 S. Ct. 637, 645 (2024). "To the extent that it is not inconsistent with admiralty principles, however, state contract law may be applicable to maritime contracts." *Rozel Operating Co., supra*, at *4, quoting *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 459 (5th Cir. 1995).

U.S. Specialty disputes the applicability of maritime law, arguing that McKinney's claims against the insurers are surety agreements to which maritime law does not apply (though U.S. Specialty concedes maritime law applies to both salvage agreements and marine insurance policies). The distinction is ultimately without substance in this case, because, as explained herein, maritime and Louisiana law would dictate the same results.

Initially, U.S. Specialty argues that McKinney's complaint fails for lack of factual allegations regarding each insurer's specific involvement in a purported

6

guarantee or suretyship. It contends that the lack of factual allegations regarding each insurer's limit of liability, percentage of several participation, or trigger of coverage, as well as the Mitsui email, which refers to the insurers collectively as "Underwriters," dooms McKinney's claims; however, Rule 8 requires only a short and plain statement of the claim "in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. A defendant responding to the complaint should know what to answer. *Id*. at fn. 10. The Court finds that McKinney's claims do not fail merely because the insurers are aggregately sued as "Underwriters" collectively. The allegations are sufficient to put each insurer on notice that McKinney is seeking to recover its unpaid invoices from any "Underwriter" bound to pay, perhaps acknowledging the ambiguity in the Mitsui Management email.

U.S. Specialty further asserts, with lengthy legal argument, that the complaint does not state a claim based upon a guaranty or suretyship agreement; however, the complaint purports to take no such position. McKinney acknowledges that it has not pled a claim based on suretyship (Rec. Doc. 75, p. 4). Consistent with both parties' positions, the Court agrees that the alleged facts do not support a claim based on a suretyship agreement.³ Additionally, the parties do not dispute that McKinney lacks

---

³ Surety agreements (agreements to pay for the debts or damages incurred by another) are governed by state law rather than maritime, even if they pertain to maritime contract debts.

contractual privity with Rigid's insurers, and McKinney asserts no claims for breach of contract against them. Further, McKinney is not permitted to proceed against Rigid's insurers in a statutory direct action.[4] Rather, McKinney's claims for detrimental reliance, unjust enrichment, and as third-party beneficiary control the Court's analysis as the only potentially available claims against Rigid's insurers. Because, as explained below, unjust enrichment is a subsidiary claim, only available where no other claims exist, the Court shall first consider McKinney's claims as third-party beneficiary (*stipulation pour autrui*) and for detrimental reliance, which as will be shown, are critically related.

### III.  *Stipulation Pour Autrui*

The Court first considers McKinney's newest claim as third-party beneficiary under Count Three, because the survival of its detrimental reliance claim depends on the fate of its *stipulation pour autrui* claim. Pursuant La. C.C. art. 1978, a

---

See *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.,* 346 F.3d 552, 566 (5th Cir. 2003); *Comar Marine Corp. v. Raider Marine Logistics, L.L.C.,* No. 6:09-CV-1438, 2013 WL 2181036, at *19 (W.D. La. May 20, 2013), *aff'd,* 792 F.3d 564 (5th Cir. 2015). Louisiana law requires surety agreements to be express, in writing, and to contain absolute expression of the intent to be bound. La. C.C. art. 3035-3040; *Tractor & Equip. Co. v. Dual Trucking & Transp., LLC*, 274 F. Supp. 3d 462, 466 (E.D. La. 2017), *aff'd sub nom. Tractor & Equip. Co. v. Dual Trucking & Transp., L.L.C.,* 731 F. App'x 334 (5th Cir. 2018). The Mitsui email does not absolutely express the insurers' clear intent to create a suretyship. No party disputes this.

4   Louisiana state law, La. R.S. 22:1269, establishes an injured party's right of direct action against a tortfeasor's insurer. The statute does not apply to this quasi-contractual claim.

8

contracting party may stipulate a benefit for a third person, the third-party beneficiary (hence, in Louisiana's French tradition, a *stipulation pour autrui,* meaning "for others").[5]

> In Louisiana, a plaintiff may sue under an insurance policy if that plaintiff is a third-party beneficiary of such policy. The Louisiana Supreme Court articulated a three-part test to determine whether a contract confers third-party beneficiary status, known as a *stipulation pour autrui*: 1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee. … [T]he party claiming the benefit bears the burden of proof when that party is neither a named or additional insured on the policy.

*Weyerhaeuser Co. v. Burlington Ins. Co.,* 74 F.4th 275, 290 (5th Cir. 2023) (cleaned up), citing *Joseph v. Hosp. Serv. Dist. No. 2 of the Parish of St. Mary*, 2005-2364 (La. 10/15/06); 939 So. 2d 1206, 1212.

The jurisprudence emphasizes that a valid *stipulation pour autrui* requires a clearly contemplated, direct benefit to the third party as a condition or consideration of the contract; the benefit must not be merely incidental. *Kane Enterprises v. MacGregor (USA) Inc*., 322 F.3d 371, 375 (5th Cir. 2003); *Zaveri*, 27 F.Supp.3d at 703, citing *Joseph,* 939 So.2d at 1212.

---

[5] Maritime law also recognizes a claim for third-party beneficiaries; however, McKinney asserted its claim pursuant to Louisiana law. Rec. Doc. 57, ¶27. In any event, the analysis is the same. See *Branch v. Art Catering, Inc.,* No. CIV A 05-1223, 2007 WL 1747023, at *1 (E.D. La. June 15, 2007).

9

McKinney rests its third-party beneficiary claim upon the purported email agreement between Rigid and Mitsui Management that the insurers would pay the salvage fees.[6] The insurers contest the classification of the email as a contract which could trigger *stipulation pour autrui* liability, but, under Rule 12(b)(6), the Court must construe McKinney's allegations in its favor and therefore considers the email as an agreement to which the *stipulation pour autrui* analysis could apply. Thus, the Court asks, first, whether the stipulation in McKinney's favor is manifestly clear. The Court finds that it is. Mitsui unambiguously stated to Rigid that the "Underwriters" would pay for McKinney's services. Second, there is certainty as to the benefit—payment of fees. Third, the benefit is not a mere incident of the agreement between Rigid and Mitsui Management and/or the insurers. Indeed, the sole purpose of the agreement is to fulfill McKinney's alleged requirement for a guarantee that its fees would be paid.

Notwithstanding an otherwise sufficient *stipulation pour autrui* in favor of McKinney, the parties raise a significant issue of agency, which directly affects whether the email/agreement exists as a stipulation in McKinney's favor. The insurers contend that Ms. Campanale at Mitsui Management did not have authority

---

[6] Although "Louisiana courts have recognized that indemnitees under 'insured contracts' often qualify as third-party beneficiaries under the policies insuring such contracts," (*Weyerhaeuser Co.,* 74 F.4th at 290), McKinney bases its claim exclusively on the email and does not allege to be an additional insured or indemnitee of Rigid's policies.

to bind the insurers for payment of McKinney's fees. In fact, McKinney raises an alternative claim against Mitsui Management based on its alleged lack of authority. (Rec. Doc. 57, ¶33). Of course, the question of agency is one of the disputed facts that cannot be resolved at this stage.

Additionally, the Court cannot interpret the email as purporting to bind only the primary insurers, as Lloyd's argues. Importantly, Rigid contends that Mitsui Management was the managing agent for both primary and excess insurers, (Rec. Doc. 10; Rec. Doc. 76, p. 6), and McKinney alleges that Mitsui Management guaranteed payment on behalf of "Underwriters," which the complaint identifies as all three insurers. Lloyd's has not yet responded to the cross-claim, and the Court is bound to construe the allegations in McKinney's favor.

Although the email, like the complaint, vaguely refers to the "Underwriters" who will be paying for the salvage, Ms. Campanale stated that "P&I Excess are on notice and aware in the event their policy is triggered," suggesting perhaps that Lloyd's was not paying, or at least not yet. Perhaps, Lloyd's policy would be triggered, depending on the cost of the salvage and the underlying policy limits (neither of which is noted in the email or the pertinent pleadings), in which case, Ms. Campanale arguably promised that Lloyd's would pay too. These questions of interpretation and authority cannot be resolved at this early stage, where all disputes

11

must be resolved in the plaintiff's favor, but the *possibility* of a *stipulation pour autrui* is sufficient to withstand Rule 12(b)(6) scrutiny.

## IV. Detrimental Reliance

McKinney frames its Count Two claims against the insurers as a single count for "Detrimental Reliance/Unjust Enrichment," but the claims are distinct. Detrimental reliance under Louisiana law is set forth in La. C.C. art. 1967:[7]

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

To state a claim for detrimental reliance, the plaintiff must show (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. *Suire v. Lafayette City-Par. Consol. Gov't*, 2004-1459 (La. 4/12/05), 907 So. 2d 37, 59. Applied in the context of this case, McKinney must show that (1) a representation was made to it by the word or conduct of the insurers that insurers would pay for the salvage; (2)

---

[7] General Maritime Law recognizes the essentially identical claim of equitable estoppel. *World Fuel Servs., Inc. v. SE Shipping Lines PTE Ltd.,* No. CIV.A. 10-4605, 2011 WL 5403210, at *5 (E.D. La. Nov. 8, 2011). See also *Coastal Cargo Co. v. GUSTAV SULE M/V*, 239 F.3d 366, fn. 1 (5th Cir. 2000) regarding distinct nature of claims. The complaint is unclear whether McKinney asserts this particular claim under Louisiana law or maritime law. Regardless of the source of McKinney's claim, the result would be the same.

12

McKinney justifiably relied on this word or conduct; and (3) McKinney changed its position by performing the services in reliance on this word or conduct. See *RSDC Holdings, LLC v. M.G. Mayer Yacht Servs., Inc.,* 429 F. Supp. 3d 246, 259 (E.D. La. 2019), citing *Suire, supra.*

Ordinarily, La. C.C. art. 1967 does not apply to third parties. *Denbury Onshore, L.L.C. v. Pucheu*, 2008-1210 (La. App. 3 Cir. 3/11/09), 6 So. 3d 386, 397; *Magic Moments Pizza, Inc. v. Louisiana Restaurant Ass'n*, App. 5 Cir.2002, 819 So.2d 1146, 02-160 (La.App. 5 Cir. 5/29/02). However, Louisiana law recognizes an exception when such claims are asserted by third-party beneficiaries to the contract. La. C.C. art. 1981 explicitly authorizes a third-party beneficiary to demand performance from the promisor. As such, the third-party beneficiary, though not a party to the contract, may assert a claim for detrimental reliance. See *McCleery v. Speed*, No. 22-30213, 2023 WL 1099149, at *3 (5th Cir. Jan. 30, 2023) (acknowledging that "a third party can sue for detrimental reliance against a promisor that fails to uphold a promise in certain situations," provided that the third party actually sues the promisor). See further *McKee v. Southfield Sch.*, 613 So. 2d 659, 661 (La. 2 Cir. 1993) (former student, though not a party to a financial agreement between his father and the school, was an intended beneficiary of the agreement and therefore entitled to a direct action against the school); *A.F. Blair Co. v. Haydel*, 504 So. 2d 1044, 1046 (La. 1 Cir. 1987) (third party construction company

13

stated a claim for detrimental reliance against a bank which entered into a contract with a doctor promising to finance construction of the doctor's building). The Court finds *A.F. Blair Co.* particularly instructive as factually similar. According to McKinney's allegations, McKinney would not have agreed to salvage the barge for Rigid without a promise that its bills would be paid. The Mitsui Management email is a sufficient promise to pay such that McKinney has stated a claim as a third-party beneficiary and, hence, a claim for detrimental reliance when the insurers allegedly failed to fulfill the promise.

### V. **Unjust Enrichment**

In conjunction with its claim for detrimental reliance in Count Two, McKinney also asserts a claim for unjust enrichment against the insurers.

> The Fifth Circuit recognizes admiralty claims for unjust enrichment. The requisites of the enrichment action are (i) enrichment, (ii) impoverishment, (iii) a connection between the enrichment and impoverishment, (iv) absence of justification or cause, and (v) the subsidiary character of the remedy. The "subsidiary character of the remedy" means that the remedy is not available if the law provides another remedy for the impoverishment or declares a contrary rule.

*MARMAC, LLC v. InterMoor, Inc.,* 566 F. Supp. 3d 559, 580 (E.D. La. 2021), citing *Kane v. Motor Vessel Leda*, 491 F.2d 899, 900 (5th Cir. 1974).

Likewise, Louisiana's law on unjust enrichment, which is instructive in a maritime context *(MARMAC, supra*, fn. 138), if not exclusively applicable, requires a showing of enrichment without cause and subsidiary character.

14

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

La. C.C. art. 2298.

The elements of a Louisiana unjust enrichment claim mirror those of the claim under maritime law. See *Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.,* 376 F.3d 399, 407 (5th Cir. 2004), listing elements. Despite the insurers' arguments that McKinney has no viable claims for either detrimental reliance or as a third-party beneficiary, the insurers rely primarily on the fifth element—availability of other remedies—to undercut McKinney's unjust enrichment claim.[8] "[T]he remedy of unjust enrichment is subsidiary in nature, shall not be available if the law provides another remedy, …[and is] only applicable to fill a gap in the law where no express remedy is provided." *Walters v. MedSouth Rec. Mgmt., LLC*, 2010-0351 (La. 6/4/10), 38 So. 3d 245, 246 (cleaned up). Hence, the plaintiff would have no claim for unjust enrichment in a case alleging breach of

---

[8] The Court finds that McKinney's allegations otherwise support a claim for unjust enrichment. McKinney was impoverished (expenditure of its resources for the salvage) for the insurers' conceivable benefit (savings of fees that they might otherwise be required to pay under their policies). Though Lloyd's argues the third element—connection between the enrichment and impoverishment—is not met, the Court disagrees. The Mitsui email sufficiently links the two. McKinney allegedly would not have undertaken the salvage but for the insurers' purported promise to pay the fees.

contract or tort claims. See *Hidden Grove, LLC v. Brauns*, 2022-00757 (La. 1/27/23), 356 So. 3d 974, 978.

Some courts, both Louisiana and federal, disagree about whether unjust enrichment may permissibly be pled in the alternative. In one school of thought, because unjust enrichment is a subsidiary claim, it cannot exist—even alternatively—when other viable claims are available (regardless of whether such other claims have been pled). See discussion in *Zaveri v. Condor Petroleum Corp.*, 27 F. Supp. 3d 695, 701 (W.D. La. 2014) and cases cited therein.

In the other school are cases relying on F.R.C.P. Rule 8, which generally allows parties to plead inconsistent or alternative causes of action. See e.g. *24/7 Restoration Specialists, LLC v. Young*, 634 F. Supp. 3d 287, 292 (E.D. La. 2022), which refused to dismiss unjust enrichment claims at the motion to dismiss stage given the parties' dispute about the existence of a contract. See also *BlueTeam Roofing, LLC v. Piazza*, No. CV 23-931, 2023 WL 7920748, at *3 (E.D. La. Nov. 16, 2023) (allowing unjust enrichment to proceed as an alternative claim under Rule 8 where the underlying facts to be discovered may not ultimately support any other claims); *Gilco Constr. Co. v. Falcon Holdings Mgmt., LLC*, No. CV 20-37-JWD-SDJ, 2021 WL 4765503, at *8 (M.D. La. Sept. 20, 2021), *report and recommendation adopted*, No. CV 20-37-JWD-SDJ, 2021 WL 4755620 (M.D. La. Oct. 12, 2021) (declining to dismiss unjust enrichment claims at removal stage where

as yet undiscovered facts rendered a determination on the existence and viability of other claims premature.) Compare *MCP Int'l, LLC v. Formula Four Beverages, Inc.,* No. CV 20-3440-WBV-DMD, 2022 WL 782752, at *4 (E.D. La. Mar. 15, 2022) (dismissing alternatively pled unjust enrichment claim where the parties did not dispute the existence of a valid contract, thereby establishing an undisputed breach of contract claim).

Unlike the foregoing cases, *Zaveri, supra,* rejected the notion that Rule 8 could supplant Louisiana substantive law, relying primarily on the Louisiana Supreme Court decision in *Walters*. In *Walters*, the plaintiff filed a delictual action, which was dismissed as prescribed, and an alternative claim for unjust enrichment. In dismissing the alternative claim, the court reasoned: "The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment." *Walters*, 38 So.3d at 246-47.

McKinney argues that precedent rejecting unjust enrichment as an alternative claim is no longer instructive in light of the Louisiana Supreme Court's 2023 ruling in *Hidden Grove, LLC v. Brauns*, *supra*. In that case, a developer filed suit against the owners of certain lots alleging breach of contract with alternative claims for trespass and unjust enrichment. 356 So.3d at 976. Noting that the plaintiff had abandoned its breach of contract claim (without further discussion, though the facts

17

indicate no contract existed) and that the plaintiff had no viable trespass claim, the court reinstated the plaintiff's unjust enrichment claim. *Id*. at 977-78. In doing so, the court soundly reversed the appellate court's holding which had dismissed the claim on the theory that the plaintiff could have done more to protect its interests by obtaining a written contract. *Id.*

This Court interprets *Hidden Grove* as a modification of *Walters* that sanctions the alternative nature of unjust enrichment claims as appropriate in certain cases where the facts (either as plead or as later developed) do not support the existence of another claim. Stated differently, under both *Hidden Grove* and *Walters*, whether an unjust enrichment claim survives as an alternative claim depends upon the *existence*—not the success or the merits—of other potential claims. Absent a contract, contractual claims do not exist. Absent a surety agreement, a claim based on suretyship does not exist. Absent a valid *stipulation pour autrui,* claims as a third-party beneficiary and for detrimental reliance do not exist. The Mitsui email presents many unresolved issues (e.g. did Mitsui Management have authority to bind any of the insurers for payment? If so, which insurers?). The to-be-determined outcome of these issues dictates whether the email constitutes an agreement or stipulation upon which McKinney may pursue other claims. If the trier of fact ultimately concludes that Ms. Campanale did not have authority to bind the insurers to pay McKinney's fees, then a *stipulation pour autrui* did not exist, and McKinney may arguably

18

proceed on an unjust enrichment claim. Hence, McKinney's unjust enrichment claim should survive, at least as an alternative claim.

## Conclusion

For the reasons discussed herein, the Court recommends that the following motions be DENIED: Motion to Dismiss by U.S. Specialty Insurance Company (Rec. Doc. 66); Motion to Dismiss by Mitsui Sumitomo Insurance USA, Inc. and Mitsui Sumitomo Marine Management (USA), Inc. (Rec. Doc. 69); Motion to Dismiss by Certain Underwriters at Lloyd's Subscribing Severally to Policy bearing Unique Market Reference No. B1115E210162 (Rec. Doc. 70).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds

of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 12th day of April, 2024.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE